Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Matthew R. Snyder (SBN 350907)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: 818-619-3774
tfriedman@toddflaw.com
abacon@toddflaw.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN JUNG, individually, and on all others similarly situated, and on behalf of the general public, <br><br> Plaintiff, <br><br> vs. <br><br> DISCOVER BANK, <br><br> Defendant. | Case No. 3:25-cv-6383-CRB <br><br> **CLASS ACTION** <br><br> **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF BASED ON VIOLATIONS OF:** <br><br> **(1) Electronic Funds Transfer Act [15 U.S.C. § 1693 et seq.]** <br> **(2) California Commercial Code §§ 11201, et seq.** <br> **(3) Unfair Competition Law (Cal. Business & Professions Code §§ 17200 et seq.),** <br><br> **DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiffs JONATHAN JUNG ("Plaintiff") on behalf of himself and all others similarly situated, allege the following against Defendant Discover Bank ("Defendant") upon information and belief based upon personal knowledge:

**INTRODUCTION**

1. Plaintiff's Class Action Complaint is brought pursuant to the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq. ("EFTA"), arising from Defendant's failure to reimburse

**FIRST AMENDED CLASS ACTION COMPLAINT**
**-1-**

Plaintiff and similarly situated consumers for unauthorized electronic fund transfers from their deposit accounts. Plaintiff further alleges that Defendant's conduct constitutes violations of the California Commercial Code §§ 11201 et seq., and unfair and unlawful business practices under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL").

2. Plaintiff, individually and on behalf of all others similarly situated, brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies resulting from the illegal actions of Defendant in routinely holding consumers liable for unauthorized electronic fund transfers made out of their deposit accounts, thereby violating the EFTA, 15 U.S.C. § 1693g(a). Plaintiff alleges as follows upon personal knowledge as to his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION & VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331, because this action is brought pursuant to the EFTA, 15 U.S.C. § 1693 et seq.

4. Jurisdiction also arises under 15 U.S.C. § 1693m, which states that, "without regard to the amount in controversy, any action under this section may be brought in any United States district court."

5. Venue and personal jurisdiction in this District are proper pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides within this District and Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

## PARTIES

6. Plaintiff Jonathan Jung is a natural person residing in Millbrae, San Mateo County, California, and is a "consumer" as defined by 15 U.S.C. § 1693a(6).

7. At all relevant times herein, Plaintiff held a joint online savings account with Defendant Discover Bank.

8. Defendant Discover Bank ("Defendant" or "Discover") is a Delaware-chartered bank and financial institution operating and offering deposit account services throughout the United States, including within the state of California and this District.

9.    The above-named Defendant, and its subsidiaries and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

10.    Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTUAL ALLEGATIONS

11.    Plaintiff maintained a joint online savings account with Defendant Discover Bank, shared with his wife, Karen Chiu.

12.    Between October 2023 and December 2024, Plaintiff's account was breached on multiple occasions. More than $100,000 was stolen through unauthorized ACH withdrawals during this period.

13.    Discover refunded these unauthorized transactions only after Plaintiff initiated disputes. However, Defendant failed to detect or prevent the fraud on its own and did not implement adequate protections despite the repeated breaches.

14.    Plaintiff and Ms. Chiu were forced to close and reopen their Discover account five times, and implemented additional security measures including verbal passwords, freezing the account when not in use, and frequently updating login credentials.

15.    On December 5, 2024, Ms. Chiu received a phone call that appeared to come from Discover's official phone number (1-800-347-7000). The caller identified herself as a Discover Bank fraud team member and referenced legitimate account activity, making the call

appear authentic.

16.     The caller instructed Ms. Chiu to verify her identity using Socure, a third-party vendor that Discover Bank actually uses for ID verification. She complied and uploaded her identification through the Socure platform after receiving authentication codes via text from Discover.

17.     Immediately afterward, Plaintiff received an email confirming that a wire transfer of $110,000 had been initiated from his account ending in 2057, along with a $30 service fee. This was the first wire transfer ever initiated from Plaintiff's account.

18.     Plaintiff immediately contacted Discover Bank to dispute the wire transfer and report the fraud. Discover closed the account, opened a replacement account, and initiated a fraud investigation and wire recall request.

19.     Over the following months, Discover provided Plaintiff with conflicting and inaccurate updates. Representatives claimed the funds were sent to a Malaysian bank (Malayan Banking Berhad), then later said they went to Bank of America.

20.     Discover later confirmed the wire had been sent to a Bank of America account ending in 4409. However, the bank ultimately closed the recall and refused to reimburse Plaintiff, stating the transaction had passed their internal security measures.

21.     Plaintiff also filed complaints with the Consumer Financial Protection Bureau (CFPB), the Federal Reserve, the Office of the Comptroller of the Currency (OCC), the Internet Crime Complaint Center (IC3), and the local police department. Discover again denied liability, stating that biometric and authentication protocols had been completed—even though those credentials had been obtained through fraud.

22.     Discover repeatedly told Plaintiff that it had submitted a hold harmless letter to Bank of America, which was allegedly required by the recipient bank to return the funds. However, Plaintiff later learned that Discover never submitted the letter due to a wording mismatch between its form and Bank of America's. This breakdown in communication may have caused a critical delay that affected the success of the recovery.

23.     At no time during its investigation did Discover provisionally credit Plaintiff's

account for the $110,000 fraudulently withdrawn from his account.

24.    As of the date of this filing, Discover has refused to refund Plaintiff the $110,000 that was fraudulently withdrawn from his account.  Plaintiff, thus, alleges that Discover failed to conduct a good faith investigation of the fraudulent wire transfers. Moreover, Plaintiff alleges that Discover did not have a reasonable basis for believing that the $110,000 wire transfers were not authorized by him or Ms. Chiu.

25.    Based on Plaintiff's knowledge and public information about Discover's online banking platform, wire transfers initiated by account holders through Discover's consumer-facing web interface involve several electronic steps. The customer logs into their account, verifies their identity through authentication protocols (such as security questions, passcodes, or biometric checks), and submits an instruction for the wire transfer using their own personal device. This instruction authorizes Discover to debit their deposit account for the requested amount and initiate the outgoing transfer.

26.    The initial act of transferring funds from the customer's deposit account into the outgoing wire system is performed electronically, using Discover's internal systems and authentication architecture. From the consumer's standpoint, this is functionally identical to any other online transaction that debits a bank account—such as ACH transfers, bill payments, or peer-to-peer money movements—all of which are treated as "electronic fund transfers" under federal law.

27.    Although the ultimate delivery of funds to the recipient bank may occur via an interbank wire network (such as Fedwire or SWIFT), that interbank segment is distinct from the consumer-to-bank segment, which is electronically initiated and completed within the bank's system. The portion of the transaction that debits the consumer's deposit account, using credentials, authorization codes, and bank software, meets every element of an "electronic fund transfer" under 15 U.S.C. § 1693a(6).

28.    As courts have recognized, including in litigation concerning similar fraud schemes, the relevant inquiry under the EFTA focuses on how the transaction is initiated. When a consumer uses their bank's online tools to send funds, the resulting debit is not excluded from

EFTA coverage simply because it is later routed through a wire transfer system. The law's wire transfer exclusion applies to interbank transmissions, not to the consumer-facing transaction that triggers the initial debit.

29.    Discover Bank advertises its online banking platform as secure, user-controlled, and suitable for initiating wire transfers without branch visits. The bank encourages consumers to authorize wire transactions digitally, using credentials and multi-factor authentication methods issued to the consumer. At no point are bank employees required to initiate the payment order on the customer's behalf; the consumer's actions alone trigger the debit from their deposit account.

30.    In Plaintiff's case, Discover processed the $110,000 wire transfer automatically based on electronic instructions submitted through its consumer interface. No physical signature or paper instruction was provided. Instead, Discover relied solely on credentialed access and identity verification protocols—protocols that had been compromised by fraud. The entire transfer process was digital, consumer-facing, and electronically authenticated.

31.    The EFTA governs electronic transactions that debit a consumer's account through automated systems, including those initiated via online banking platforms. Because the wire transfer in this case was initiated electronically, using login credentials and biometric confirmation, and because the funds were debited from Plaintiff's deposit account solely by means of that electronic authorization, it qualifies as an "electronic fund transfer" under the statute, even if the ultimate delivery occurred through an interbank wire network.

32.    At the time of the fraudulent wire transfer from Plaintiff's account, the United States Supreme Court had already issued its opinion in *Loper Bright Enterprises v. Raimondo*, ruling that agency interpretations of federal law are no longer owed deference. 603 U.S. 369 (2024).

33.    Moreover, during the pendency of Discover's investigation of the fraudulent wire transfer from Plaintiff's account, the Southern District of New York entered its order in *New York v. Citibank, N.A.*, 763 F.Supp.3d 496 (S.D.N.Y. 2025). More specifically, Discover continued to investigate Plaintiff's claims and held his dispute open well into April of 2025.

Plaintiff spoke with Discover's representatives at least 50 times between February and May of 2025 regarding the status of his case. Discover's representatives repeatedly informed Plaintiff that his case was still open and its investigation was ongoing.

34.    Plaintiff thus alleges that Defendant knew, or should have known, that it could not reasonably rely on the regulations and interpretations promulgated by executive agencies in determining that EFTA did not apply to the fraudulent wire transfers out of Plaintiff's account. Substantial changes in jurisprudence occurred before and during the investigation of Plaintiff's disputes. Plaintiff alleges upon information and belief that Defendant either filed to consider these changes in jurisprudence altogether, or disregarded them in bad faith.

35.    Plaintiff, thus, alleges that Defendant did not, in good faith, rely on any agency interpretations of EFTA when it (1) decided to hold him liable for the fraudulent transfers from his account; (2) failed to conduct a good faith investigation of his dispute of the fraudulent transfers; (3) unreasonably concluded that Plaintiff had authorized the fraudulent transfers; and (4) failed to provisionally credit Plaintiff for the fraudulent transfers from his account.

## CLASS ALLEGATIONS

36.    Plaintiff brings this action on behalf of himself and all others similarly situated, as members of the proposed class (hereafter "The Class"), defined as follows:

> All persons in the United States who had funds electronically transferred from a deposit account held with Defendant that they did not authorize, and who notified Defendant of such unauthorized transfer within sixty (60) days but were not reimbursed by Defendant, within one year prior to the filing of this Complaint.

37.    Plaintiff represents, and are members of, The Class, consisting of all persons in the United States who had funds electronically transferred from a deposit account held with Defendant who did not authorize such transfer, and who notified Defendant of such unauthorized transfer within sixty days but were not reimbursed by Defendant within the one year prior to the filing of this Complaint.

38.    Defendant, its employees and agents are excluded from The Class. Plaintiff does

not know the number of members in The Class, but believes the Class members number in the hundreds, if not more. Thus, this matter should be certified as Class Action to assist in the expeditious litigation of the matter.

39.    The Class is so numerous that the individual joinder of all of its members is impractical.  While the exact number and identities of The Class members are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believe and thereon alleges that The Class includes hundreds, if not thousands, of members.  Plaintiff alleges that The Class members may be ascertained by the records maintained by Defendants.

40.    This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class is so numerous that joinder of the Class members is impractical and the disposition of their claims in the class action will provide substantial benefits both to the parties and to the Court.

41.    There are questions of law and fact common to the Class affecting the parties to be represented.  The questions of law and fact to the Class predominate over questions which may affect individual Class members and include, but are not necessarily limited to, the following:

a)    Whether Class Members authorized electronic transfers from their deposit accounts held with Defendant;

b)    Whether Class Members notified Defendant of unauthorized transfers from their deposit accounts held with Defendant;

c)    Whether Defendant reimbursed Class Members for those unauthorized transfers;

d)    Whether Defendant conducted a good faith investigation of Plaintiff and Class Members' disputes of unauthorized transfers;

e)    Whether Defendant provisionally credited Plaintiff and Class Members' accounts for the unauthorized wire transfers;

f)    Whether Defendant had a reasonable basis to conclude that Plaintiff and Class Members had authorized the wire transfers;

g)    Whether such conduct constitutes a violation of the EFTA;

h) Whether such conduct violated Commercial Code §§ 11201, *et seq.*;

i) Whether such conduct constitutes a violation of the UCL;

j) Whether Defendant owed Class Members a fiduciary duty;

k) Whether Defendant breached that fiduciary duty; and

l) Whether Defendant breached its contractual obligations with Class Members.

42. As a person who had funds electronically transferred from a deposit account held with Defendant who did not authorize such transfer, and who notified Defendant of such unauthorized transfer within sixty days but was not reimbursed by Defendant within the one year prior to the filing of this Complaint, Plaintiff is asserting claims that are typical of The Class.

43. Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

44. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

45. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would

substantially impair or impede the ability of such non-party Class members to protect their interests.

## COUNT I: VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT

### (On Behalf of Plaintiff and the Class)

46. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

47. The $110,000 wire transfer from Plaintiff's account was an "unauthorized electronic fund transfer" under 15 U.S.C. § 1693a(12), initiated by someone other than Plaintiff and without Plaintiff's actual authority or benefit.

48. 15 U.S.C. § 1693g states that a consumer is not liable for any unauthorized electronic fund transfer unless such transfer was made using an accepted card for the account and the issuing institution has provided a means to identify the person using said accepted card.

49. The wire transfer at issue was not made using an accepted card or through Plaintiff's authorization. The access credentials and verification were obtained through fraud and impersonation.

50. Moreover, 15 U.S.C. § 1693g(a)(1) limits the liability of a consumer for an unauthorized electronic fund transfer to no more than $50.00, even when such transfer is made using an accepted method of access. Plaintiff notified Defendant promptly upon learning of the unauthorized transfer, well within the statutory timeframe. Thus, even assuming arguendo that the transfer was made using an accepted method, Defendant was required to reimburse Plaintiff at least $109,950.00, representing the $110,000 transfer minus the $50 statutory limit. Defendant failed to do so.

51. Plaintiff notified Defendant of the unauthorized transfer within 60 days of the statement date, as required by the statute.

52. Defendant similarly failed to reimburse Class Members and thus held them liable for unauthorized transfers above and beyond what is allowed under EFTA.

53. Because Defendant failed to reimburse Plaintiffs and the Class for the

unauthorized electronic transfers, Defendant has violated 15 U.S.C. § 1693g, thereby entitling Plaintiffs and the Class to relief pursuant to 15 U.S.C. § 1693m.

54. Additionally, Plaintiff alleges that at no time did Defendant provisionally credit his or the Class's accounts for the amounts fraudulently withdrawn.

55. Plaintiff alleges that Defendant did not investigate any fraudulent wire transfers in good faith, and did not have a reasonable basis for believing that Plaintiff and the Class authorized the fraudulent wire transfers.

56. Plaintiff and the Class are, therefore, entitled to treble damages pursuant to 15 U.S.C. § 1693f(e).

## COUNT II: VIOLATION OF CALIFORNIA COMMERCIAL CODE §§ 11201

### (On Behalf of Plaintiffs and the Class)

### (Alleged in the Alternative to Count I)

57. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

58. The $110,000 wire transfer described above constitutes a "payment order" as defined by Cal. Com. Code § 11103(a)(1), in that it was an instruction to Defendant to pay a fixed amount of money to a beneficiary, transmitted directly to the bank, and not subject to any condition.

59. A payment order is authorized only if it is authorized by the person identified as sender or is authorized under the law of agency.

60. The wire transfer at issue was not authorized by Plaintiff or his co-account holder, nor by any legally authorized agent. It was fraudulently induced and carried out by an imposter.

61. Moreover, Plaintiff is informed and believes, and thereon alleges, that Defendant did not maintain or apply a commercially reasonable security procedure for verifying the authenticity of payment orders, as required by Cal. Com. Code § 11202.

62. Because the payment order was not authorized and no commercially reasonable

procedure was followed, Defendant was required to refund the amount of the unauthorized transfer under Cal. Com. Code § 11204.

63.    Defendant's refusal to do so constitutes a violation of the California Commercial Code, entitling Plaintiff and Class Members to damages, interest, and any other relief available under law.

## COUNT III: VIOLATION OF VIOLATION OF THE UNFAIR COMPETITION LAW

### (On Behalf of Plaintiff, the Class, and the general public)

64.    Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

65.    Actions for relief under the UCL may be based on any business act or practice that is unlawful, unfair, or fraudulent. A plaintiff must show a causal connection between a defendant's business practices and the alleged harm. The "act or practice" aspect of the statutory definition covers single acts and ongoing misconduct.

### UNFAIR

66.    California Business & Professions Code § 17200 prohibits any "unfair... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

67.    In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

68.    Here, Defendant's conduct has caused and continues to cause substantial injury

to Plaintiff and members of the Class. Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to refuse to provide them refunds for the unauthorized transfers described herein. Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Class.

69.    Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such conduct by Defendant caused Plaintiff and members of the Class to lose substantial sums of money that they are not liable for. Thus, the injury suffered by Plaintiff and the members of the Class is not outweighed by any countervailing benefits to consumers.

70.    Finally, the injury suffered by Plaintiff and members of the Class is not an injury that these consumers could reasonably have avoided. Defendant refused to provide refunds after having been notified of the unauthorized transfers at issue. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

71.    Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

### UNLAWFUL

72.    California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

73.    As described above, Plaintiff alleges that Defendant's conduct constitutes violations of the Electronic Funds Transfer Act and the California Commercial Code.

74.    Defendant's acts, as pled herein, are therefore "unlawful" business practices or acts under Business and Professions Code Section 17200 *et seq*. for violating EFTA and the California Commercial Code.

75.    Defendant's conduct caused and continues to cause economic harm to Plaintiff and Members of the Class.

///

**FRAUDULENT**

76.    California Business and Professions Code Section 17200, *et seq*. also prohibits "fraudulent…business act[s] or practice[s]."

77.    As described above, Defendant misrepresented and continues to misrepresent its ability to protect consumer funds, and misled Plaintiff and Class Members into believing their accounts were adequately secured and protected from fraudulent access and unauthorized withdrawals.

78.    Defendant's conduct was likely to deceive, and did in fact deceive, reasonable consumers, including Plaintiff and Class Members, into believing they would be reimbursed in the event of a fraudulent or unauthorized transfer.

79.    Plaintiff and Class Members relied on these misrepresentations and omissions to their detriment, including continuing to use Defendant's services and keeping funds in their Discover accounts.

**PUBLIC INJUNCTIVE RELIEF**

80.    Plaintiff hereby seeks public injunctive relief on behalf of the general public to stop Defendant's ongoing practice of refusing to refund or otherwise reimburse victims of wire transfer fraud, as described herein.

81.    Such public injunctive relief would benefit the general public because it would stop Defendant's ongoing practices, as described herein, and therefore would prevent other individuals who have not yet been harmed by Defendant's practices from suffering a similar harm that was suffered by Plaintiff.

82.    Plaintiff is seeking a forward-looking injunction on behalf of the general public.

83.    Plaintiff's claim for public injunctive relief is not intended to correct a past wrong by Defendant, but instead to prevent future violations of the EFTA, California Commercial Code, and UCL.  Certainly, an order requiring Defendant to cease its practice of refusing to refund or reimburse victims of wire transfer fraud would necessarily benefit individuals who are not yet class members by protecting them from the same wrongs already suffered by Plaintiff and the putative Class.

84. Moreover, such public injunctive relief would benefit the general public because it would strengthen public trust in the American banking system.

85. Defendant's alleged failure to follow adequate security procedures, maintain consumer funds, and refund consumers who are the victims of wire transfer fraud not only presents the potential for future harm to consumers but also erodes public trust in the banking system and the economy as a whole.

86. Public injunctive relief would address all of these concerns and would undoubtedly benefit the public at large.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JONATHAN JUNG, individually and on behalf of all similarly situated, respectfully requests that judgment be entered against Defendant DISCOVER BANK and award relief as follows:

a) That this action be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff be appointed as Class Representative, and that Plaintiff's counsel be appointed as Class Counsel;

b) Statutory damages of $1,000.00, per Class Members, pursuant to the Electronic Fund Transfer Act;

c) Actual damages;

d) Restitution and/or disgorgement of all funds wrongfully retained by Defendant in violation of the California Unfair Competition Law;

e) Public injunctive relief and restitution pursuant to California Business and Professions Code § 17203;

f) For prejudgment interest at the legal rate;

g) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1693m(a);

f) Such other and further relief as the Court deems just and proper.

## TRIAL BY JURY

87. Pursuant to the seventh amendment to the Constitution of the United States of

America, Plaintiff is entitled to, and demands, a trial by jury.

Respectfully submitted this 25th Day of November, 2025.

By: /s/ Todd M. Friedman
Law Offices of Todd M. Friedman, P.C.
Attorney for Plaintiff